Judge Ukdeuwood
delivered the opinion of the Court.
This cause was, heretofore before this court. See II. Litt. 258. Upon the return of it to the circuit court, at the March term, 1823, an order was entered, in pursuance of the mandate of this court, reversing and setting aside the order, made on the application of Charles Campbell, which set aside the final decree, rendered in January, 18.16, and permitted Campbell to file his answer.
The circuit court, likewise, upon the return of the cause, proceeded to adjudicate upon the application or motion of the-defendants, Dickey, Buckhannon, and the representatives, and grantees, of Robert Johnson, deceased, and Michael Campbell, made at the March term, 1816, in the character of non-residents, to open the final decree of the preceding January, and to permit them to fil.e their answers.
Upon consideration, the decree, in respect to these defendants, was annulled; they having tendered bond, with security, in the penalty of $300, conditioned as the law requires, for securing costs. See I. Dig. 60,
Motion fay non-residents, to open decree within 7 years, and entered of record, no objection to motion, that court did not acton it, mt in. years
*157 It is here necessary to dispose,of two errors assigned, which question the legality of the proceedings of the circuit court, upon the return of the cause this court, in its first steps. It is alleged, that the circuit court did not carry into effect, the mandate of this court, in respect to Charles Campbell; and also, that it erred, in setting aside the final decree, of January, 1816, and reinstating the cause on the docket, as it respects Dickey, Buckhannon, Johnson’s representatives, and Michael Campbell. The first objection W'e deem unavailing, it sufficiently appears, that the circuit court, by its order, on the .return of the cátrse, meant to rid the final decree of 1816, from the effects of the order, setting aside, upon the application of Charles Campbell. If the circuit court had not proceeded to open the final decree of 1816, by acting upon the motion of the non-resident defendants, entered at the term next after the final decree was rendered, the final decree must have remained unaltered, and should have been ¿arded into effect. Did the court err in thus acting? We think it did not. It is true, that the motion to open the decree, on the part of the non-residents, had been entered, and permitted to rest for many yeárs, without being noticed. It was, however, attached to the cause, and this court, when the cause was before it, considered the motion as still pending, and undisposed of. It was, therefore, proper on the return of the case to the circuit court, for that tribunal to act upon, and dispose of the motion. Did the inferior court dispose of it correctly? We think it did,-so far as to open the decree for the purpose of admitting the answers of the non-resident defendants, and fixing the terms and conditions, upon which their answers were to be filed. No plausible objection has been urged against this, but the lapse of time.
This objection ought not to prevail, because, within the seven year.s, allowed by law, for opening decrees, in such cases, the non-resident defendants, had moved the court, to open the decree, and to receive their answers, and their motion had been entered of record. It was the duty of the court to act earlier upon their motion. The failure of the court to perform Its duty, ought not to operate, so as to deprive them *158 0f a right, secured to them by law, and exercised on-their Part within proper time. Regarding the properly opened, so far as it affected the rights of the non-residents, how does the case stand? rpjie f0|i0wing facts, are the basis, upon which the law must operate to decide the cause.
On the 24th July, 1?95, the executors of John Larue, conveyed to Joseph Kirkpatrick, six tracts of land, by metes and bounds, amounting in the whole, to 6900 acres, on Nolin. The deed speaks of conveying 9510 acres, on the Ohio and Nolin; but nothing is said in the deed of the land, on the Ohio.
From other things in the cause, it would seem there was a tract on the Ohio, at the- mouth of Doe run, for 3610 acres, for which the executors made a transa fer of the plat and certificate, and that may be the reason, why this .tract, although contracted to Kirkpatrick, was not described by metes and bounds in the deed, the consideration expressed, in which was £100.
On the 17th August, 1795, said Kirkpatrick, for the consideration expressed in the deed of £1000, conveyed said charts of land, containing 5900 acres, to Michael and Charles Campbell.
Said Campbells, on the 11th March, 1796, conveyed said charts, to Robert Johnson, James Dickey, and James Buckhannon. The proof, however, is deficient as to the execution of the deed by Michael Campbell; but this, cannot affect the controversy, as the bill admits such conveyance.
The proof is satisfactory, that the executors of Larue, in selling these lands, transcended the powers vested-in them by, his will. They were only authorized-to sell so much land, as was necessary to raise funds to pay the debts. The debts, according.to the proof,; did not exceed £30. It is also well establish-. ed,.that the executors acted with bad faith;; that the sale was in reality, made to Philip Philips, one of the executors; and that the - conveyance was made to Kirkpatrick, (as. a. device to conceal the improper conduct of the executors, in selling to one of their pwn body) who held the land, for the benefit of *159 Philips. This is confirmed by the fact, that Philips united with Kirkpatrick, in the deed to the Camp-bfells.
jíex,IS hav., jns power by will, to soli land for payment of debts, sell more than necessary to pay debts, responsible to heirs or devi-sees, but bona fide purchasers ofland, having no notice of fraud of ex’rs. cannot be affected
*159 Dickey and Buckhannon, on the 8th of June, 1809, conveyed to Bard, Findley, and R. Johnson, as executors of Doctor Robert Johnson, deceased, 2900 acres, of the 5900 acres, on Nolin, being, as it would seem from the deed, the share allotted to the executors, in a division of the land.
On the 28th March, 1814, Bard andFndley, two of the executors of Doctor Robert Johnson, conveyed to John Johnson and John Beaty, the 2900 acres, previously conveyed to them by Dickey and Buckhannon. John Johnson, in October, 1820, conveyed his undivid¿ ed moiety of the 2900 acres, in trust to Thomas Johnson*
In 1821, John Johnson,, and Thomas Johnson, the trustee, conveyed their interest to Doctor William S. Young, who, by petition to the court, was admitted a defendant, after the return of the cause, from this court.
in July, 1827, the circuit court rendered a decree, dismissing the bill of the complainants, as to Michael Campbell, executor of Philip Philips, and as to him, in his - own right-, and also, as to Dickey, Buckhannon, Johnson’s representatives, William S. Young, and the heirs of Philip Philips, and' decreed costs, in favor of these defendants, against the complainants. In respect to the other defendants, the decree of 1816, was directed to remain in full force, except so far as it was necessarily midifled by dismissing the bill, as to the defendants, above named. To reverse this decree, the complainants in the circuit court, have prosecuted their writ of error, with Supersedeas.
We shall dispose of the cause, without noticing,particularly, the assignment Of errors. There is no evidence, that Michael'Campbell, Dickey, Buckhan-non, or Young, had any knowledge that the sale of the lands, made by Larue’s executors to Kirkpatrick, was fraudulent,
The will of Larue, gave them authority to sell for the purpose of paying debts. If they .abused or *160 trafisc'én'de'd their authority, they are responsible to the heirs or devisees; but bona fide purchasers from them or their vendees, cannot be aifected, unless they have notice of theimproper conduct of the executors. What debts Larue owed, or how much land it was necessary to sell to pay them, were matters, of which the executors should judge, and upon which, they alone, were "competent to decide. The testator reposed confidence in them, and gave them authority to act, and thereby, strangers were invited to entertain confidence. It would, therefore, be unjust to permit strangers, who purchased in good faith, to sustain injury from the frauds of the'executors. It was proper in court, under this view of the cause, to dismiss the bill, as to W. Campbell, Dickey, Buckhannon and Young.
By the deed of June, 1809, from Dickey and Buckhannon, to Bard, Findley and R. Johnson, as executors of Doctor Robert Johnson, they, whether executors or not, acquired all the interest which Dickey and Buckhannon, had in the 2900 acres, mentioned in the deed. All the interest which Bard and Findley thus acquired, passed, by their deed of March, 1814, to John Johnson, and John Beaty, whether devisees or not, of Doctor Robert Johnson, and John Johnson’s interest passed to Wilüam S. Young, in the manner already mentioned.
It does not appear that Bard, Findley, and Robert Johnson, were the executors'of Doctor Robert Johnson, deceased, but as by the 'deed from Dickey and Buckhannon, to them, they are shewn to possess an interest, it was proper to make them parties. It does not appear that this ever was done. The same remark, equally applies, to Beaty, John and Thomas Johnson.
So far as the bill, therefore, was designed to obtain for Larue’s devisees, a re-conveyan.ce of the title, to the 5900 acres onNolin, all the proper parties were not before the court. It does not certainly, appear, that Doctor Robert Johnson was dead; consequéntly, if living, as a defendant, he was competent Vo represent his interest, to one third of the 5900 acres, which he was entitled to, under the deed, from the Camp-bells to him, Dickey and Buckhannon. If dead., as *161 may be inferred, before the bringing of this suit, then a decree against him, would have no effect in divesting those of title, to whom his third passed, upon his death.
Adm’r selling slaves, when not necessary for payment of debts, liable for value of slave at time of final decree, and reasonable hire, from time of sale. So, ex’r. improperly selling land, when not necessary for payment of debts, responsible for value of land, at time of final decree, and reasonable r nt, from BuTheiror' devisee, noth receive pay, dr rent for jnarle otAand after sale, by -labor of nth-'injured byb0 waste.
*161 Inasmuch, then, as insuperable difficulties seemed to present themselves, and to obstruct the complainants in the acquisition of the title^to the whole 6900 acres, on Nolin, it was proper in the circuit court, to decide against all attempts of the complainants, to re-possess themselves of the title. But it by no means follows, that the complainants frerenot entitled to the value of the land. We think they were so entitled, because of the improper conduct of the executors of Larue, in selling more land than was necessary to pay his debts. But against whom should such a decree be rendered? We think it should have gone against the representatives of Philip Philips.
His estate, according to the pleadings, is ample; and he was the man, according to the proof, who profited by the sale. He indemnified his co-executor, Hodgen, to induce him to unite in the execution of the deed to Kirkpatrick. What lands ought they to pay for, and what time should be selected for their valuation.
It is well settled, that when an administrator sells slaves, when their sab is not necessary, for the payment of debts, he is liable for the value of the slaves sold, at the time of the final decree, and a reasonable hire, from the time of sale, up to the date of the decree. Or if the slave sold, shall have become useless, then the administrator shall be charged with the sum for which the slave sold. See II. Bibb*, 189. We perceive no impropriety, in fixing the principle by which, the liability of executors, for abusing their power, shall be regulated in strict analogy, to that, which regulates the liability of administrators, when they transcend their authority. Nor do we perceive any better rule in relation to land, than that laid down concerning slaves, making such modification of it, however, as will prevent the heir or devisee, from profiting by the improvements, put on the land by the labor of others, after the sale made by the executor, and guarding the-heir or devisee against loss, resulting *162 from the depreciation in the value of the land front waste, committed after the sale. Thus, if the land sold, be unimproved at the time of sale, the executor selling it, should account for its value ^me decree, supposing it had remained in the same situation, it was in when sold. 1/, at the time of sale, the land he improved, then the value of t¡ie |an j at the date of the decree, supposing no t\ astc, together with the value‘ of the improvements on it, at the date of the sale* loss, by the usual wear and natura] decay of such improvements, and a reasonable rent upon land, as improved when sold, up to the date of the decree, should regúlate the recovery.
In every such deviseeV abandonval-ue of land & rent, & claim which It was sold, and in-ferest thereon
But in every case, we perceive no objection to give the heir or devisee, the option toabandon, if he chooses, vak*e !af)d, and rent therefor, and claim the price for-which it was sold, and interest thereon, Under this latter rule, Philips’s representatives would ije accountable for the sums he received for the lands when sold "to the Caldwells;" but if the title was warranted by "Philips, and the Jancl, or any part thereof, f,as Jjeen taken byparamount claims, then he should be credited by the amount, he is bound to refund, under his warranty; and if the lands are valued, under the preceding rules, and they be covered by adverse claims, the state.of the titles should be taken into consideration, in estimating the value.
All the lands which Philips’s representatives afe bound to pay for, according to any rule prescribed, are the 5900 acres, onNolin, Michael Campbells half of the 3610 acres, on the Ohio, (Charles Campbell ~being bound under the decree of 1816, to convey his half of this tract, to, the complainants, this decree, as -to said Charles, being unreversed) and the 1400 ■ acres, sold to'William M‘Clung. Carman, under the decree of 1816, is bound to relinquish the 300 acres,, purchased by him.
But as the executors of Larue, were authorized to •sell lands, for the payment of debts, and as there were £27 due by the testator, according to the admission of the bill, it must be ascertained how much land it was necessary to sell, to raise these £27; and as to ¿hat quantity, Philips’s representatives must be exon *163 erated^forit-isonly, to the extent of the abuse, of the power given the executors, that Philips’s representatives must be rendered liable.
J.J.Crittenden, for plaintiffs;- T. T.-Crittenden, fot defendants.
Decree reversed, and the cause remanded, for,proceedings in conformity to this opinion/
The plaintiffs in error must recover their costs.