## Upshaw Buckner v. H. C. Buckner, Trustee.

## H. C. Buckner, Trustee v. Sarah A. E. Buckner's Exr.

(Decided October 28, 1919.)

### Appeals from the Christian Circuit Court.

1.  Wills—Power Conferred Upon Executor—Sale and Conveyance By.—A testatrix by the third and fourth clauses of her will devised her entire estate, after payment of her debts, to two of her sons equally in trust for their wives and children, respectively, clothed the sons with power as such trustees to divide between them the trust property, and empowered each trustee, after such division, to sell any part of the real estate held by him in trust for reinvestment in other real estate to be held in like trust, but required that such sale and reinvestment be made by authority and under the judgment of a court of equity.  By the fifth clause of the will one of the sons (Upshaw Buckner) was given, as the executor thereof, the following powers: "My executor shall have full power and authority to sell and convey any portion of my lands before the final division of same between the devisees under the third clause of this instrument, if it shall be necessary to sell land for the payment of my debts or charges against me or my estate, or for any other purpose; and the division of my lands devised by said clause may be made by my said sons, Henry C. Buckner and Upshaw Buckner."  Held, that the power conferred upon the executor by the fifth clause of the will was to sell and convey any part of the lands devised, before the final division of the estate between the trustees named in the will, either for the purpose of paying debts against the estate "or for any other purpose" necessary to the proper administration of the estate or its equal division, preparatory to such division, between the brothers for the purposes of the trust created by the third and fourth clauses of the will.

2.  Wills—Power Conferred Upon Executor.—The power to sell any part of the lands devised conferred on the executor by the fifth clause of the will, could only be exercised by him before a division between the two sons of the testatrix of the estate devised them in trust; and a sale and conveyance of any part of the devised lands made by the executor before such division, whether the sale was for the purpose of paying debts against the estate of the

_estatrix, or to enable him and his brother to make a fair division between themselves as trustees of the estate devised them in trust, passed to a bona fide purchaser of the land a valid title to same.

3. Executors and Administrators—Purchase of Land Sold By.—A purchaser in good faith and for a valuable consideration of land sold by an executor under authority conferred by will, is not required to look to the application of the purchase money, unless so expressly required by some provision of the will. Ky. Stats., section 4846.

4. Executors and Administrators—Purchaser of Land Sold By—Good Faith.—Where one purchases land from an executor he is bound to know whether or not the latter is authorized by the will to make the sale, and if the executor has no such power the purchaser is not an innocent or bona fire purchaser. But where the executor has power to sell, a purchaser from him acquires good title, notwithstanding the bad faith of the executor in making the sale, where he had no knowledge of such bad faith; for the purchaser has a right to presume that the executor is acting in good faith, and is not bound to inquire whether a necessity for the exercise of the power given by the will exists; and unless he has notice that the sale is made for a purpose other than that for which the will empowers the executor to sell, he will acquire a good title.

5. Executors and Administrators—Power of Sale Conferred Upon—Accounting.—Although in this case the executor under the power of sale conferred by the will sold more of the devised land than was necessary to pay the debts of the estate, as such sales were also necessary to a proper division of the devised estate as contemplated by the will, and also authorized by the will for that purpose, and the surplus proceeds of the sales, after payment of debts, were accounted for by the executor in a subsequent division of the estate made, as required by the will, between himself and brother as trustees thereunder, the executor cannot, in an action threafter brought against him by certain of the devisees and beneficiaries of the trust created by the will, be again made to account for the money. Especially is this true where such devisees or beneficiaries, being sui juris, themselves participated in the sales of the lands or division of the estate which followed; for as to them the doctrine of estoppel would apply.

SELDON Y. TRIMBLE, J. W. DOWNER and TRIMBLE & BELL for Upshaw Buckner, Exor.

BREATHITT, ALLENSWORTH & BREATHITT for appellant and appellee, H. C. Buckner.

FRANK RIVES for appellees, Frank Rives, Ella D. and D. J. McClendon, and Lelie A. Troendale.

C. H. BUSH and J. W. DOWNER for T. P. Johnson.

Opinion of the Court by Judge Settle—Reversing in part and affirming in part.

Although brought to this court by separate appeals, styled as above indicated, the rights of the parties to the two appeals were all determined in the court below in the one action and by the same judgment; and as the two appeals were submitted and considered together in this court, our decision of the questions thereby presented and the reasons therefor will be set forth in this single opinion.

In order that the questions involved may be fully understood we think it needful to give a statement of the facts to which they are related. In the year 1907 Mrs. Sarah A. E. Buckner, a widow then eighty-two years of age, died in Christian county, where she had always resided, leaving a considerable estate. She disposed of the whole of the estate by a will made in 1901, about six years before her death, which instrument in due course was admitted to probate by the Christian county court. At the same time Upshaw Buckner, a son of the testatrix, appointed executor without security by the will, duly qualified in that capacity and assumed charge of the estate.

The first clause of the will directs the payment by the executor of the testatrix's just debts and funeral expenses "as soon as possible" after her death. Clause second excludes the testatrix's two sons, Samuel G. Buckner and William F. Buckner, and the children of her deceased daughter, Anna B. Wooldridge, from sharing in the estate devised; and directs that the two sons named and her son-in-law, Joseph C. Woolridge, be released by the executor from the payment of certain notes of several thousand dollars each she held against them, respectively, the reason for the exclusion of these two sons and the children of the deceased daughter from any interest in the property devised being that the testatrix had given and advanced to each of the sons and the daughter, in money or property, all they were entitled to receive from her estate.

As clauses 1 and 2 of the will are not here involved they are omitted from this opinion, but the remaining clauses of the will being before us for construction, are herein set forth in full:

"*Third.* After the payment of my just debts and funeral expenses, and the cost and expenses of the ad-

ministration of my estate, I will, devise and bequeath to my sons, Henry C. Buckner and Upshaw Buckner, share and share alike but in trust, as provided in the next succeeding clause of this instrument, all of the rest, residue, and remainder of my estate and property, both real, personal, and mixed, and wherever the same may be situated, except the notes specified in the next preceding clause of this instrument which I hold against my two sons and son-in-law therein named.

"*Fourth.* It is my will that the share of my estate which is devised and bequeathed in the next preceding clause of this instrument to each of my sons, Henry C. Buckner and Upshaw Buckner, in trust, shall be possessed, occupied, held, managed and controlled by them, respectively, in trust for the use and benefit of their children who may be living at my death, and the survivors of their children. It is my will that each of my said sons shall have the right, power, and authority, during his life, to receive, hold, use and dispose of the produce, income, profits and increase of the share of my estate that is so as aforesaid devised and bequeathed to him in trust, for the use, benefit, support, maintenance, education and comfort of his family, as he may deem best, and in his discretion without security and without accounting for same. But neither of my said sons shall have the right, power, or authority, in any way, or for any purpose to encumber, or to sell or convey any land or real property that may fall to the share of my estate so as aforesaid devised and bequeathed to him in trust, and the same shall not be sold during the existence of said trusts except by virtue of the judgment and under the direction of a court of competent jurisdiction in such cases, and then only for reinvestment in other similar property upon the same uses and trusts. In the event of the death of any of the children, without lawful issue surviving, of either of my said sons during his life, the share of any one so dying shall vest in his or her surviving brothers and sisters; but should the one so dying leave lawful issue surviving, such issue shall inherit his or her share, and shall be entitled to the benefits of the trust equally with the others. At the death of either of my said sons the trust herein created shall cease as to him, and the property and estate devised and bequeathed to him in trust shall be freed and discharged from the trust, and the legal *cestuis que trust,* and in that event his (the trustee's) surviving widow shall be entitled to

and interest in such property or estate equivalent to the dower and distributable interest provided by the statutes in similar property.

"*Fifth.* My executor shall have full power and authority to sell and convey any portion of my lands before the final division of same between the devisees under the third clause of this instrument, if it shall be necessary to sell land for the payment of debts or charges against me or my estate, or for any other purpose. And the division of my lands devised by said clause may be made by my said sons, Henry C. Buckner and Upshaw Buckner.

"*Sixth.* I nominate my son, Upshaw Buckner, executor of this my last will and testament, and having full confidence in his ability and integrity, I request that he be permitted to qualify and act as such without security."

The estate left by the testatrix consisted almost exclusively of lands in Christian county, including two tracts about midway between Hopkinsville and Clarksville, one containing 485 acres known as the "Oak Grove farm," the other 301 acres known as the "Longview farm." In addition to these farms she owned a dwelling house and three acres of land known as the "Radford Place," just without the corporate limits of Hopkinsville. Until three or four years prior to her death the testatrix resided on the Longview farm with her youngest son, Upshaw Buckner, who was then a bachelor. Until 1894 Henry C. Buckner lived on the Oak Grove farm. His wife having died that year leaving two daughters of tender years, he removed with them to the Longview farm in order to place them under the care of his mother. Some years ago Upshaw married and removed from the Longview farm to Hopkinsville. After remaining several years with his mother and brother on the Longview farm Henry removed his daughters, then sixteen and eighteen years of age, respectively, to Hopkinsville, on account of the supposed advantages afforded them by residence in in that city. However, he did not have the money to purchase a home in Hopkinsville and asked the assistance of his mother. In order to raise it she conceived the idea of dividing the Oak Grove farm between Henry C. and Upshaw so that by mortgaging Henry's part of the farm she could obtain the loan of a sum sufficient to purchase the Hopkinsville home for him. Pursuant to this plan the Oak Grove farm was divided, 269 acres of it being allotted to Henry and 216 acres to Upshaw. It

was a part of the plan, however, that following the division as stated the mother should retain the title to the divided lands and also take the title to the Hopkinsville home. She borrowed of one Tandy $4,000.00, secured by a mortgage executed by her on the 269 acres of land allotted Henry from the Oak Grove farm. With this sum she purchased the house and three acres of land near Hopkinsville, the title to which was conveyed her by proper deed from the vendor. So, as already stated, the title to this property, as well as to the whole of the Oak Grove farm, was, like that of the Longview farm, in the testatrix at the time of her death, although each of the sons had possession of and received the rents or income from the part of the Oak Grove farm allotted him in the division from the time it was made. The facts so far stated are admitted.

The meaning of the third clause of the will is admittedly free of doubt. By it the entire estate, both real and personal, after the payment of the testatrix's debts by the executor as by clause 1 directed, is devised her two sons Henry C. Buckner and Upshaw Buckner, equally, in trust for their wives and children, or the survivors.

The fourth clause of the will, equally clear in meaning, elaborately defines the trust created by the third clause and in substance provides that after the payment of the testatrix's debts the property, real and personal, devised be divided equally between the two sons Henry and Upshaw and held by them under the trust, which shall terminate at their deaths. This clause clothes the trustees with the discretion to determine whether the lands, or any of them, held shall be sold for reinvestment of the proceeds in other lands to be held in like trust, but requires that any such sale and reinvestment be made by authority of a court of equity conferred by its judgment.

The fifth clause, however, confers upon the executor alone full power to sell the lands devised before the estate is divided, for purposes other than reinvestment.

Again note the language of that clause:

"My executor shall have full power and authority to sell and convey any portion of my lands, before the final division of same between the devisees under the third clause of this instrument, if it shall be necessary to sell land for the payment of debts or charges against me or my estate, or for any other purpose, and the division of my lands devised by said clause may be made by my sons Henry C. Buckner and Upshaw Buckner."

We think it clear from the explicitness of the language used that the power conferred by the fifth clause of the will upon the executor is to sell the lands devised, either for the purpose of paying debts against the estate as therein expressly declared, or *"for any other purpose"* connected with and necessary to the proper administration of the estate or its equal division, preparatory to such division, between the brothers for the purposes of the trust created by the third and fourth clauses of the will; and if the power to sell the lands for either of the purposes indicated is conferred upon the executor by the will, the power of the latter to convey by proper deed to the purchaser the land sold by him results by implication.

We think it equally clear from the language of the will referred to that the power to sell the devised lands conferred upon the executor alone by the fifth clause of the will is to be exercised by him before the division of the estate, is shown by the command in that clause that it be so done; and also by the language of clauses three and four which declare that his powers as executor shall cease with the division; for when it is made he becomes, like Henry C. Buckner, a trustee under the will; and neither trustee nor both together could sell the lands after a division of the estate, because that power is lodged by the will in a court of equity, although it may not be exercised except at the suit of the trustees or one of them. In other words, the only sales of the devised lands authorized by the will that could be made after the division between the brothers would be sales of trust property for reinvestment, which the court only could cause to be made under a proper judgment.

It must have been in the mind of the testatrix that it might become necessary for the executor not only to sell some of the land to pay the debts against the estate, but also to enable him to make an equal or fair division of the entire estate between himself and brother; hence, the power to the executor to sell any part of the lands for the latter purpose was conferred by the words "or any other purpose," appearing in the fifth clause of the will in connection with those authorizing the sale of the lands to pay the debts of the estate. The only limitation placed upon either power by the will is that it must be exercised "before the final division" of the estate between the devisees under the will. The necessity for exercising either power, however, is left by the will to the

discretion of the executor alone.   This is not strange in view of the relationship of the executor to the testatrix and her long continued reliance upon his judgment and assistance, which is given emphasis by his appointment both as executor and trustee in the will without bond or security.   Whether, as argued by counsel, this confidence of the testatrix in the judgment of the executor was misplaced is not for us to say, but it is apparent from the record that it remained with the testatrix until her death. Such being the powers of the executor under the will, we now come to the consideration of certain of his acts as executor and trustee complained of in this case.

The action was brought in the names of H. C. Buckner in his own right and as trustee under the will of Sarah A. E. Buckner for his daughters, Sarah G. Herndon and Bettie Noe, and by the latter, their husbands, Y. M. Herndon and A. D. Noe, Jr., joining therein, against Upshaw Buckner, executor of the will of Sarah A. E. Buckner and trustee thereunder for his three infant children, Henry Buckner, Annie Buckner and Martha Buckner, and Frank Rives, T. P. Johnson, Lula J. Broadus, G. E. Broadus her husband, Lillie A. Troendle, Theodore Troendle her husband, D. J. McClendon and Ella McClendon his wife.   The object of the action, as stated in the petition, was to obtain a construction of Sarah A. E. Buckner's will; set aside certain deeds whereby the executor of the will conveyed Frank Rives and T. P. Johnson parts of the real estate left by the testatrix and Rives conveyed the lands purchased by him from the executor to Mrs. Broadus and Mrs. Troendle and the latter conveyed what she had purchased to D. J. McClendon.   The petition also attacked as fraudulent a division made of the devised estate between the trustees named in the will and alleged a misappropriation by the executor of the property and assets of the devised estate; demanded an accounting and complete settlement of him and an equal division of the estate between the trustees.

Without noticing in detail the numerous pleadings, filed by the parties, it is sufficient to say that the separate answers filed by the several defendants put in issue every allegation of fact in the petition essential to the obtention of the relief sought, as did the responsive pleadings of the latter the affirmative matter of the answers.

It appears from the pleadings and evidence that the testatrix, Mrs. Sarah A. E. Buckner, left no personal property at her death and that she was then owing debts amounting to more than $6,000.00, consisting of the $4,000.00 note to Tandy and accrued interest, secured by the mortgage on 269 acres of the Oak Grove place; and other debts, including an overdraft of $114.95, in a Hopkinsville bank, aggregating $1,400.00. As these debts had to be paid and there was no personal property belonging to the estate out of which to pay them, it became necessary in the opinion of the executor of the will, to sell real estate for that purpose, under the power so to do, conferred upon him by the will; hence on July 6, 1908, eight months after the testatrix's death, he in his executorial capacity sold and, by deed, conveyed the Longview farm of something over 300 acres to the appellee Frank Rives at the price of $32.00 per acre, amounting to $9,783.81. Out of this amount the executor paid the $1,400.00 indebtedness of the testatrix's estate, exclusive of the mortgage debt owing to Tandy, which left of the consideration received for the Longview farm $8,383.42. One-half of this amount, $4,191.71, the executor paid to himself as trustee under the will of A. E. Buckner, and the other half, $4,191.71, to Henry C. Buckner as like trustee and his two daughters, Sarah G. Herndon and Bettie Buckner, now Bettie Noe, the amount received by the father being $2,741.71, and by the daughters $1,450.00.

The sale of the Longview farm and division of the proceeds remaining after paying the above indicated indebtedness of $1,400.00, owing by the estate of the testatrix, were made by the executor with the consent and upon the advice of Henry C. Buckner as trustee under the will of Sarah A. E. Buckner. After his purchase of the Longview farm Rives sold and, by deed, conveyed a part of it to the appellee, Lula J. Broadus, and the remainder to the appellee, Lillie A. Troendle, who later, in conjunction with her husband Theodore Troendle, sold and, by deed, conveyed the part she purchased to the appellee, D. J. McClendon.

As after the sale of the Longview farm, the Tandy $4,000.00 note, secured by mortgage on 269 acres of the Oak Grove farm, remained unpaid, the executor in order to pay it, with the consent and upon the advice of Henry C. Buckner as trustee, sold the 269 acres of the Oak Grove farm, covered by the mortgage, to the ap-

pellee, T. P. Johnson, at the price of $5,335.00. Johnson refused, however, to accept the deed conveying the land tendered him by the executor, unless Henry C. Buckner in his own right and as trustee, and his two daughters would unite therein with the executor. Henry C. Buckner and daughters, the latter being each then over twenty-one years of age, readily consented to join in the deed and, together with T. N. Herndon husband of the then married daughter, Sarah G. Herndon, did so; whereupon Johnson accepted the deed and paid the executor the agreed consideration for the land. The executor thereupon applied $4,751.30, of the $5,335.00, received from Johnson for the land to the payment of the Tandy note, principal and interest, which discharged the mortgage lien on the land purchased by Johnson. What remained of the purchase money received of Johnson for the land, $583.70, was paid by the executor to Henry C. Buckner as trustee under the will of Sarah A. E. Buckner.

The record gives no support to the complaint of the petition that the sales of the lands by the executor to Rives and Johnson, respectively, or the deeds made in pursuance thereof, were collusive or fraudulent. As there was no money nor other personal property belonging to the estate, received by the executor, with which to pay the debts of the testatrix, amounting, as previously stated, to more than $6,000.00, it was obviously necessary that some, if not all, of the land disposed of be sold by the executor for the purpose of obtaining the money to pay these debts; and, as we have already seen, authority to sell the real estate devised, or any part of it, for that purpose, was expressly conferred upon the executor by the testatrix's will.

We therefore have here a case in which the necessity of a sale of devised real estate to pay the debts of the testatrix, can not be disputed; and, in addition, full power conferred by the will of the latter upon the executor to sell and convey the real estate, or a sufficiency thereof, for the "payment of debts, or charges against me or my estate or for any other purpose"; the will leaving it to the judgment of the executor to determine the necessity for the sale, or sales, what lands should be sold and the quantity; and placing no restriction upon his right to make such sale or sales privately. The rule is universal, that where such broad power as here found is given by the will, the executor may proceed to sell the

realty without recourse to the courts for further authority. In an excellent discussion of this rule contained in 18 Cyc. 321, it is said: "Where executors are given a general power of sale they may sell at their discretion, as prudence may dictate during the continuance of the trust, and are not limited to a sale for purposes of administration, although they must not act arbitrarily or capriciously in the matter, while if the power is limited it can be exercised only under the circumstances, for the purposes, and in the manner provided for or contemplated in the will. The power contained in the will should, however, be given a liberal construction in order to carry into effect the true purpose of the testator."

On pages 323-324, same volume, it is further said: "With reference to what property may be sold by the executor the provisions of the will must govern. If the power given is to sell only specified realty, or only a certain part of the realty, the executor cannot sell any of the other realty without an order of court, unless a power of sale in respect thereto can be fairly implied. Where an executor is empowered by the will to sell any portion of the real estate, he is vested with a discretion to determine what property shall be sold." Ross v. Barr, 21 R. 974.

With reference to the manner and conduct of sales of realty by executors, we are told in the same volume, page 325, that, "while public sales are insisted on in a few states, the more general rule permits a private sale at the discretion of the executor, prudently and honestly exercised. Statutes with respect to appraisement, advertisement, notice and the like are usually held applicable only to sales under judicial license and not to those made under a power in the will." There exists in this state no statute requiring sales of realty by an executor under testamentary authority to be made publicly. On the contrary, in the absence of a provision in the will directing that they be made publicly, the rule is that such sales may be made privately, and such is the almost universal custom.

In such a state of case as is here presented it is proper to inquire what duty is imposed by law upon the purchaser of devised realty sold by an executor? We understand the law on this subject to be as thus stated in 18 Cyc. 337:

"Where one purchases land from an executor as such he is bound to know whether or not the latter is author-

ized by the will to make the sale, and if the executor has no such power the purchaser is not an innocent or *bona fide*. purchaser. But where the executor has power to sell, a purchaser from him acquires good title notwithstanding the bad faith of the executor in making the sale, where he had no knowledge of such bad faith; for the purchaser has a right to presume that the executor is acting in good faith, and is not bound to inquire whether a necessity for the exercise of the power given by the will exists, although he must not disregard information which he can not avoid receiving without extraordinary negligence; and if he has notice that the sale is made for a purpose other than that for which the will empowers the executor to sell, or is otherwise unauthorized, the legal title of the devisees is not divested. Where the sale is tainted by fraud and covin between the executor and the purchaser, it is absolutely void and the title to the property remains unchanged.''

In Larue's Heirs v. Larue's Exrs., 3 J. J. Marshall, 156, the rule, *supra,* is stated as follows:

''The will of Larue gave them (the executors) authority to sell (land) for the purpose of paying debts. If they abused or transcended their authority they are responsible to the heirs or devisees; but *bona fide* purchasers from them or their vendees cannot be affected, unless they have notice of the improper conduct of the executors. What debts Larue owed, or how much land it was necessary to sell to pay them, were matters of which the executors should judge, and upon which, they alone, were competent to decide. The testator reposed confidence in them, and gave them authority to act, and thereby strangers were invited to entertain confidence. It would, therefore, be unjust to permit strangers, who purchased in good faith, to sustain injury from the frauds of the executors. It was proper in court, under this view of the cause, to dismiss the bill as to W. Campbell, Dickey, Buchannan and Young.'' Rutherford's Heirs v. Clark's Heirs, 4 Bush 271; Coleman v. McKinney, Exr., etc., 3 J. J. Marshall, 246.

Application of the foregoing rule to the facts and circumstances attending the sales of land made by the executor in this case will leave little doubt of the good faith of the latter, and furnish no cause whatever for questioning that of the purchasers. If we felt that a proper construction of Mrs. Buckner's will would require us to confine the right of the executor to sell the devised

lands for no other purpose than to pay her debts, it would still be our conclusion that the sales made by him could not, under the evidence appearing in the record, be disturbed. It was perhaps known to the purchasers that there were debts of the testatrix to be paid, that some of the land left by her would have to be sold to pay them and that the will gave the executor the power to sell it for that purpose, for this much was doubtless known to, or could have been learned by them through their reading of the recorded will, the efforts made by the executor to sell some of the land and his statements of the reasons therefor. More than this they, according to the evidence, did not know and were not required to know, or to set on foot any investigation for the purpose of learning.

What debts the testatrix owed or how much land it was necessary to sell to pay them, were matters which, by the terms of the will, the executor, and not the purchasers of the lands, had the right to determine, and upon which he alone was competent to pass. The purchasers had a right to presume that the executor knew his duties and would faithfully perform them; and if it were conceded, that in making the sales complained of, the executor abused the authority or discretion given him by the will; or that, following the sales, he misapplied the moneys received, he would be responsible to the beneficiaries of the trust created by the will for the loss, if any, thereby caused them. But neither Rives nor Johnson, nor the vendees of the former, should be made to share such responsibility, as, according to the evidence, they were *bona fide* purchasers of the lands sold them, respectively, by the executor, without notice of the alleged improper conduct on the part of the latter in making the sales or misappropriation of the moneys received. Moreover, neither Rives nor Johnson were under any duty to see to the application of the moneys received from the sales of lands made by the executor, as there was no provision of the will requiring them to do so. Ky. Stats., section 4846, provides:

"Where lands are devised to be sold on special or general trust, or are conveyed or devised to trustees or executors in trust to be sold generally or for any specific purpose, the purchaser shall not be bound to look to the application of the purchase money, unless so expressly required by the conveyance or devise."

It is insisted by counsel for the daughters of Henry C. Buckner that the good faith of the parties to the sales of land made by the executor here is impeached by the inadequacy of the prices paid for the lands. The alleged inadequacy of prices is not so apparent when the circumstances preceding and attending the sales are considered. It appears from the evidence that when the two sales of realty were made by the executor, the value of lands in Christian county and throughout south western Kentucky was lower than at any time since the war between the states, owing in part to the pernicious activity in that section of the lawless association of men known as the "Night Riders"; and in part to the low prices to which all farm products, particularly tobacco, had been brought largely through the instrumentality of the tobacco and other trusts then unlawfully operating throughout the country. Lands in Christian and adjoining counties, as elsewhere in the state, which then sold at such prices as were realized for those sold by the executor, now bring double or even three or four times the prices then prevailing.

In addition to the depressing effect upon land values caused by the existence at that time of the conditions referred to, the lands sold by the executor were, according to the evidence, in a very bad condition owing to their excessive cultivation by tenants year after year without fertilization or a proper rotation of crops. This was especially true of the Longview farm purchased by Rives and that part of the Oak Grove farm purchased by Johnson. Moreover, the buildings and fencing on both farms, particularly the one last named, had become greatly dilapidated.

It also appears from the evidence that repeated efforts were made by the executor to sell both tracts of land before their sale was effected; and that similar efforts were made by H. C. Buckner to sell the farm finally purchased by Johnson. Furthermore, that the executor advertised both farms for sale publicly in newspapers and by circulars, and at one time attempted to sell at public auction the Longview farm, the highest bid offered being rejected because regarded by him too inadequate.

When purchased by Rives the Longview farm was sold in Hopkinsville, at public auction on a court day, and knocked down to him as the highest and best bidder.

It is not made to appear from the evidence that a division or sale in parcels of either of the farms disposed of by the executor would have been advantageous. On the contrary it seems fairly apparent from the evidence that each place sold more advantageously as a whole; and, considering their bad condition and the then low value of lands, the price realized for each was, if not adequate, as much as could have been expected under the circumstances.

The validity of both sales, as well as that of the conveyances made of the lands sold to the respective purchasers, was sustained by the judgment of the circuit court. It was also adjudged by the court that the payment by the executor to Henry C. Buckner as trustee under Sarah A. E. Buckner's will of $2,741.71, and to his daughters, Sarah G. Herndon and Bettie Noe, $1,450.00, of the purchase money received for the Longview farm, and to himself as trustee under Sarah A. E. Buckner's will $4,191.71 of the purchase money received for the Longview farm, were each and all unauthorized, in violation of the trust created by the will, and constituted a fraudulent conversion of the trust funds. For the $2,741.71 paid by the executor to Henry C. Buckner and the further sum of $2,332.50 which it is declared he, Upshaw Buckner, received from the estate of Sarah A. E. Buckner in excess of his half interest therein, the two amounts aggregating $5,074.21, judgment was given against him in favor of Sarah G. Herndon and Bettie Noe, the daughters of Henry C. Buckner, which directed the immediate payment by him of the $5,074.21 into court for investment under the trust provided by the will of Mrs. Buckner for the benefit of Henry C. Buckner and his two daughters. It was further adjudged, however, that as the two daughters had, through their father's direction, received after both became twenty-one years of age, the $1,450.00 paid them by the executor out of the proceeds of the sale of the Longview farm, they were estopped to recover of the latter that amount. It was also adjudged that as the two daughters of H. C. Buckner and the husband of the one married had united with the other grantors in the deed conveying T. P. Johnson that part of the Oak Grove farm sold him by the executor, and that as both of the daughters were then more than twenty-one years of age, they were estopped to attack the deed to Johnson or to recover of him the land or its value. To so much of the judgment as awarded the re-

covery against him of the $5,071.21, in favor of Henry C. Buckner and daughters, Upshaw Buckner, as an individual, as executor and trustee, prayed and was granted an appeal. Sarah G. Herndon, Bettie Noe and the husband of each prayed and were granted an appeal from so much of the judgment as refused to set aside the sale and conveyance of the Longview farm to Frank Rives. The two appeals are set out in the caption of the opinion, in the order in which they were brought to this court.

The judgment does not state from what source Upshaw Buckner obtained the $2,332.50, with which it charges him, on the ground that the amount was in excess of what was received by Henry C. Buckner and his daughters from the estate devised by Sarah A. E. Buckner's will. We infer, however, that it was reached by taking as a basis the difference between the $5,335.00, realized from the sale to Johnson in 1908 of the 269 acres of the Oak Grove farm allotted to Henry C. Buckner in its division between him and Upshaw Buckner directed by their mother in 1904, and the $10,000.00 realized in 1911, three years later, from the sale of the 216 acres of Oak Grove farm allotted to Upshaw Buckner in the division of 1904. The difference between the amounts divided by 2, is $2,332.50, just the sum named in the judgment. We are unable to see the merit in this adjustment of equities by the court between the brothers, or, indeed, in that made by the judgment respecting the proceeds arising from the sale of the Longview farm. Regarding the first it is sufficient to say that an equal division of the Oak Grove farm between the brothers was made by their mother in 1904, three years after the execution of her will. The division made two farms of the Oak Grove place, one containing 269 acres and the other 216 acres. Henry C. Buckner was given first choice and he took the 269 acre farm, because it contained the dwelling house and outbuildings, all then in good repair, and had more cleared land than the 216 tract of fresher and partly uncleared land which fell to Upshaw Buckner. Immediately following the division each son was put in possession of the land allotted him, which possession was never disturbed by the mother. There was quite a difference, however, in the use made of the two tracts by the brothers. That received by Henry C. Buckner in the division was at once rented to tenants and continued so rented from year to year until sold to Johnson. By poor and constant cultivation it soon lost much of its productive-

ness, the buildings and fencing got in bad condition, and all the while Henry C. Buckner and his daughters were so in need of what income was derived from the tenants occupying the land, that none of it could be applied to the repairing of the buildings and fencing or improvement of the soil. Obviously, when sold to Johnson it was worth several thousand dollars less than when first taken into possession by Henry C. Buckner. On the other hand, the 216 acre tract of land received by Upshaw Buckner in the division, instead of being rented out, was by judicious cultivation, grassing and good management, so improved in fertility as to nearly or quite double its value during the years of his possession of it; and when finally in 1911, and following the division of the remainder of the devised estate between the trustees, it was sold under a decree of court for reinvestment of the proceeds in a store house in Hopkinsville as required by Mrs. Buckner's will, it is not strange that it brought $10,000.00. But the fact that it sold for so much more than was realized for the 269 acre tract of land sold Johnson or that it took nearly all the proceeds of the latter to pay the mortgage debt upon it, furnished no evidence of inequality in the previous division made of the trust property by the trustees. In that division Henry C. Buckner was properly charged with the 269 acres and Upshaw Buckner with the 216 acres of Oak Grove land. It was so intended by their mother and they merely let the division as made by her stand as of the values then given the lands, respectively, which was equal. Moreover, to allow Henry C. Buckner and his daughters half of the increase in value given Upshaw Buckner's part of the land by his judicious management of and expenditures upon it, would be giving them an advantage not contemplated by the testatrix or allowed by the terms of her will. The fact that Henry C. Buckner's part of the Oak Grove farm went to pay the mortgage of Tandy, can furnish no ground for compelling Upshaw Buckner to share with his brother's daughters the proceeds of his part of the Oak Grove farm, for it was likewise contemplated by the testatrix that the mortgage debt of Tandy would be paid by Henry C. Buckner or by a sale of his part of the Oak Grove farm.

The money obtained by the mortgage on the Oak Grove land was used to purchase for Henry C. Buckner and his daughters the Radford place in Hopkinsville,

which they yet have and the use of which they have enjoyed all the years since its purchase; and this property in the division made by the trustees was received by Henry C. Buckner as trustee for the daughters.

By joining with the executor, their father and their husbands in the deed conveying the 269 acres of Oak Grove land to Johnson, the daughters were properly held by the judgment estopped to complain of the sale to Johnson, and equally estopped by their receipt and use of the $1,450.00 paid them by the executor from the proceeds of the Longview farm, to compel him to again account for that amount. It is not perceived that the record manifests any fraud or unfairness in the sale of the Longview farm by the executor, or in the disposition made by him of its proceeds. What was left of such proceeds after the payment of the debts of the testatrix, he divided equally between himself and brother as trustees under the will, which was proper. His only error consisted in his paying $1,450.00 by direction of his brother to the latter's daughters. The amount he paid Henry C. Buckner, the daughters must look to him for. We are not prepared to say that the sale of the lands by the executor was not as necessary to an equal division of the trust estate, as for the payment of debts, and in either event the will empowered him to make them.

As bearing on the good faith and fairness of the sales of real estate made by the executor before the division of the trust property, as well as his disposition of the proceeds of such sales, it will be well to consider the attitude in this case of Henry C. Buckner. Though made a plaintiff in the action, he refused to join in its prosecution and caused himself to be dismissed as a party, and was never made a defendant. His deposition appears in the record, which shows not only his approval of, but also his participation in, practically, all the acts of the executor complained of.

It is not to be overlooked that the will of Mrs. Buckner not only appoints her two sons trustees of the trust estate devised without bond, but also confers on them, without restriction, the power to divide between themselves, as trustees, the trust property. This they have done, and in the absence of a showing of fraud or capriciousness on their part, the division made by them should stand.

The judgment is reversed on the appeal of Upshaw Buckner and others, and affirmed on the appeal of Mrs.

Herndon and others and cause remanded for such a judgment as will conform to the opinion. The whole court sitting.