812 F.2d 1406
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Homer BAKER and his wife, Lottie Ruth Baker, John V. Jones
and his wife, Iva M. Jones, Appellants,
v.
Zelma PIERCE, Executrix of the Estate of Albert Baker,
deceased, Zelma Pierce and her husband, Martin Pierce; Oma
Baker, a widow, Ova Baker and his wife, Rosie Baker, Thelma
Hibbs and her husband, J.W. Hibbs, Eva Greer and her
husband, Fred Greer, Jean Carlisle and her husband, Norman
Carlisle, Ray Baker and his wife, Jackie Baker; Barbara
Baxter and her husband, James H. Baxter, Heirs-at-Law of
Albert Baker, Deceased, Continental Coal Company, Inc., and
Shamrock Coal Company, Inc., Appellees.
 No. 85-5700.
 United States Court of Appeals, Sixth Circuit.
 Jan. 27, 1987.
 
 Before ENGEL and GUY, Circuit Judges, and SUHRHEINRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Third-party defendants, Homer and Lottie Ruth Baker and John V. and Iva J. Jones, appeal a district court judgment ordering that a deed conveying real property to them be set aside and that the property be partitioned or sold. For the reasons given below, we vacate the judgment of the district court and remand for further proceedings.
 
 
 2
 The facts and history of this case are long and complicated.[1] Albert Baker died testate in Madison County, Kentucky, on November 29, 1972. Zelma Pierce, Albert's daughter, was appointed executrix of her father's estate. Included in the will was a grant of power to the executrix to sell real estate included within the probate estate except for the homestead. In 1974, Zelma Pierce filed a complaint in the United States District Court for the Eastern District of Kentucky seeking partition or sale of all of the real property. Named as defendants were Oma Baker, Albert's widow, and the heirs of Albert Baker excluding Homer Baker. Homer Baker was not named in the complaint because he had purportedly conveyed all of his interest in the real estate to two of his sisters, one of whom was Zelma Pierce. The complaint requested the court to sell the real estate owned by Albert Baker at the time of his death and distribute the proceeds.
 
 
 3
 The case was tried before a United States Magistrate on July 25, 1979. Following trial, the magistrate issued a report and recommendation to the effect that the property be sold after a determination of its divisibility. The findings of the magistrate were adopted by the district court on January 8, 1981, which also adjudged the interests of the parties and remanded the case to the magistrate for a plan of sale. A hearing was held on February 24, 1981, to determine the divisibility of the property and a plan of sale. At that hearing, all parties stipulated that the property could not be divided without materially affecting the value.
 
 
 4
 At that time, plaintiff Zelma Pierce, executrix, through her attorney, revealed to the court that she had sold tracts 3-8, a major portion of the real estate that was the subject of this lawsuit to her brother, Homer Baker and his wife, and to John V. and Iva J. Jones for $36,630.00 by deed dated June 15, 1979. Subsequently, it was also discovered that the Bakers and Joneses entered into a coal lease with Shamrock Coal Company. The lease provided for royalty payments at the rate of $1.00 per ton of coal removed with minimum royalty payments of $12,000.00 per year for a period of five years. It was estimated by a representative of Shamrock that there were over one million tons of recoverable coal on the property.
 
 
 5
 On March 12, 1981, plaintiff executrix filed a pleading entitled "Withdrawal of Portion of Complaint," stating that she was withdrawing that portion of her complaint which requested the court to sell the property described in the complaint as tracts 3-8. Defendant heirs Oma Baker, Eva Greer, Fred Greer, and Fred Baker filed an objection to plaintiff's "Withdrawal of Portion of Complaint" and moved that the deed from Zelma Pierce to the Bakers and Joneses be declared null and void.
 
 
 6
 After a hearing conducted on April 29, 1982, the magistrate recommended the following:
 
 
 7
 1) that plaintiff's "Withdrawal of Portion of Complaint" be treated as either a motion to amend complaint under Fed.R.Civ.P. 15(a) or as a motion to dismiss under Fed.R.Civ.P. 41(a), and that in either case, the motion should be denied because it is untimely and prejudicial to defendants;
 
 
 8
 2) that the deed from Zelma Pierce to the Bakers and Joneses be held null and void;
 
 
 9
 3) that two independent appraisers be appointed to make appraisals of the property; and
 
 
 10
 4) that defendant Oma Baker be permitted to file a third-party complaint naming the Bakers and Joneses (hereinafter grantees) as third-party defendants.[2]
 
 
 11
 Subsequently, the grantees filed a motion to alter, amend, or vacate the court's adoption of the magistrate's report and recommendation. This matter was referred to the magistrate. Grantees raised three arguments in the motion: first, that the court's adoption of the report and recommendation was entered through inadvertence or mistake and that it was unclear and conflicting; second, that the grantees had not had their day in court so as to enable them to prove that their June 15, 1979, dealing with plaintiff Zelma Pierce was an arms-length transaction; third, that the order declaring the deed null and void conflicted with the court's order permitting the defendant Oma Baker to file a third-party complaint against the grantees.
 
 
 12
 The magistrate rejected the first argument. As to the second, the magistrate found that the rights of the grantees were carefully considered in all respects. Furthermore, the magistrate determined that plaintiff's fiduciary duty prohibited her from dealing with those with whom she has a substantial interest and that the sale here clearly violated that duty. Therefore, the court held such proof as the grantees would attempt to put before the court would be immaterial and irrelevant. Finally, the magistrate rejected the contention that permitting a third party complaint to be filed was inconsistent with declaring the deed to be null and void. The district court accepted the magistrate's report and recommendation over the grantees' objections.
 
 
 13
 On appeal, grantees challenge the district court's order setting aside the conveyance of tracts 3-8. They make two arguments: first, that there was no showing of wrongdoing on behalf of the plaintiff executrix, and, even if there was such a showing, grantees were good faith purchasers for value, without notice of any wrongdoing; and second, that the executrix had the power of sale in the will and therefore she did not need the court's permission to sell the property.
 
 I.
 
 14
 The grantees are correct in their contention that a breach of fiduciary duty alone is insufficient to set aside this conveyance. While a sale of land that constitutes a breach of fiduciary duty may render an executor liable for such breach, it does not necessarily void the conveyance. If the grantees are bona fide purchasers for value, and the executor has the authority to sell, they acquire good title to the property and the deed is not void. In Buckner v. Buckner, 185 Ky. 540, 215 S.W. 420 (1919), the court stated:
 
 
 15
 The will ... gave ... [the executors] authority to sell [land] for the purposes of paying debts. If they transcended their authority, they are responsible to the heirs or devisees; but bona fide purchasers from them or their vendees cannot be affected, unless they have notice of the improper conduct of the executors.... The testator reposed confidence in them, and gave them authority to act, and thereby strangers were invited to entertain confidence. It would therefore be unjust to permit strangers, who purchased in good faith, to sustain injury from the fraud of the executors.
 
 
 16
 Id. at 425 (quoting Larues Heirs v. Larues Executors, 26 Ky. (3 J.J. Marsh.) 156 (1830).
 
 
 17
 Accordingly, that plaintiff may have breached a fiduciary duty in selling the property is insufficient to set aside the deed and the magistrate's ruling to that effect was in error. In order for the transaction to be void, the grantees would have to be found not to be bona fide purchasers. As there has been no such finding, we cannot sustain the court's judgment.
 
 II.
 
 18
 Defendants assert that the judgment may be affirmed on alternative grounds. Specifically, while acknowledging that plaintiff had the power to sell tracts 3-8 in the will, defendants argue that by bringing this action to sell the land, the power to sell was forfeited or at least suspended. Consequently, they contend that plaintiff had no power of sale at the time of the transaction, and therefore no transfer could take place without approval of the court. The grantees assert that the power of sale in the will was always effective to grant such authority and that court approval was therefore unnecessary.
 
 
 19
 There is some general common law support for defendants' argument that a power of sale may be lost or forfeited. It is generally held, for instance, that where an executor does not exercise a power of sale within a reasonable time, such power is terminated. See In re Rolczynski, 349 N.W.2d 394, 397 (N.D.1984); Brandt v. Phipps, 398 Ill. 296, 311, 75 N.E.2d 757, 764 (1947); Bryant v. Fingerlos, 138 Neb. 867, 871-875, 295 N.W. 896, 898-900 (1941); Hood v. Shively, 31 S.W.2d 283, 284 (Mo.App.1930). Moreover, it has also been held that once a complaint for partition or sale is filed, a power of sale under a will is suspended; and once partition or sale is ordered, the power of sale is completely destroyed. Vierieg v. Krehmke, 293 Ill. 265, 127 N.E. 735, 737 (1920).
 
 
 20
 Here, plaintiff waited approximately seven years before exercising the power of sale in the will. This lapse of time, together with her action of filing suit and thus inducing the other heirs to believe that there would be court approval and supervision of the sale, certainly militate for a finding that plaintiff forfeited the power of sale. Nonetheless, we do not believe that the State of Kentucky would adopt such a rule in the instant case.
 
 
 21
 None of the above cases presented a grantee claiming bona fide purchaser status who took, without notice of wrongdoing or irregularity, from an executor exercising a power of sale. We do not believe that the common law rules cited above could operate to divest such a bona fide purchaser of title to property.[3] Here, the grantees claim such status. This result is consistent with the reasoning of the Kentucky court in Buckner :
 
 
 22
 Where one purchases land from an executor as such, he is bound to know whether or not the latter is authorized by the will to make the sale, and if the executor has no such power the purchaser is not an innocent or bona fide purchaser. But where the executor has power to sell, a purchaser from him acquires good title, notwithstanding the bad faith of the executor in making the sale, where he had no knowledge of such bad faith.... And if [the purchaser] has notice that the sale is made for a purpose other than that for which the will empowers the executor to sell, or is otherwise unauthorized, the legal title of the devisees is not divested. Where the sale is tainted by fraud and covin between the executor and the purchaser, it is absolutely void, and the title to the property remains unchanged.
 
 
 23
 215 S.W. at 425.
 
 
 24
 Accordingly, we hold that if the grantees are bona fide purchasers without notice of any impairment of the power of sale, the deed was effective to pass title to the property. If, however, the grantees were not acting in good faith, or had actual or constructive notice that the property was the subject of litigation, the transaction may be set aside. Alternatively, as set forth in Part I, if the transaction between plaintiff and the grantees was fraudulent as to defendants, the transaction is void.
 
 
 25
 Because there has been no finding as to whether the grantees were bona fide purchasers without notice, the judgment of the district court must be VACATED and the case REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Richard F. Suhrheinrich, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 Because this case is a probate-related matter, the court ordered oral argument and supplemental briefs to determine whether we had subject matter jurisdiction. Based on the representations of counsel and on Kentucky law regarding sale of estate assets, we now believe that we do have jurisdiction. Under Kentucky law, an action for the sale of real property belonging to an estate is not brought in the court charged with probate administration, but is to be brought in the county circuit court, a court of general jurisdiction. Ky.Rev.Stat. Sec. 24A.210. Thus, by assuming jurisdiction, we are not interfering with a state court with exclusive probate jurisdiction, nor are we interfering with property which was first within the jurisdiction of a state court. Cf. Starr v. Ruff, 421 F.2d 999, 1004-1005 (6th Cir.1970). At the same time, while a federal court may technically have jurisdiction, this case serves as an example why federal courts should and usually do decline to exercise jurisdiction in probate-related matters. First, this is an area of the law in which state courts have developed expertise. Secondly, this matter concerns the title to real property, a matter of unique local concern
 
 
 [2]
 Allowing defendants to file a third party complaint against the Bakers and Joneses was erroneous. Under Fed.R.Civ.P. 14(a), a third party complaint is permitted only when the third party plaintiff is attempting to transfer liability for the plaintiff's claim against him. The third party defendant's liability must be secondary or derivative. Such is not the case here. At the same time, the grantees could properly have been joined as defendants in this matter under Fed.R.Civ.P. 19. Once so joined, the defendant heirs could seek the same relief by filing a cross-claim. Such a claim would be within the ancillary jurisdiction of the court. In order to permit the appeal, we have construed the third party complaint as a cross-claim
 
 
 [3]
 Of course, if a notice of lis pendens had been filed on the property record there could be no bona fide purchaser. See Ky.Rev.Stat. Sec. 382.440(1). We are unable to determine on this record whether the state of the title was such as to give a buyer notice of the pending lawsuit or to alert a buyer that the plaintiff's power of sale was somehow in question